UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-00246-RJC

| | |
|---|---|
| TAMMY SISK MABE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| ANDREW M. SAUL, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 9), and Defendant's Motion for Summary Judgment, (Doc. No. 13). The motions are ripe for adjudication.

## I. BACKGROUND

### A. Procedural Background

Tammy Siske Mabe ("Plaintiff") seeks judicial review of Andrew M. Saul's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed an application for Disability Insurance under Title II of the Social Security Act ("SSA") on December 8, 2011. (Doc. Nos. 8 to 8-1: Administrative Record ("Tr.") at 155.) Her application was denied first on April 17, 2012, (Tr. 94), and upon reconsideration on July 4, 2012, (Tr. 104). Plaintiff timely filed a request for a hearing on July 19, 2012, (Tr. 112), and an administrative hearing was held by an administrative law judge ("ALJ") on September 20, 2013, (Tr. 122). Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 27.) After the Appeals Council denied

Plaintiff's request for review, Plaintiff sought judicial review of Defendant's denial of her social security claim. On June 15, 2016, the Court reversed the Commissioner's decision and remanded the matter for a new hearing. Mabe v. Colvin, No. 1:15-cv-00101, 2016 U.S. Dist. LEXIS 78022 (W.D.N.C. June 15, 2016).

On remand, another hearing was held before the ALJ on July 7, 2017. (Tr. 889.) Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 782.) Plaintiff requested a review of the ALJ's decision, but on January 23, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 746–49.) Having exhausted her administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of her social security claim in this Court.

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under sections 216(i) and 223(d) of the SSA. (Tr. 770.) To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on November 1, 2011 due to physical and mental impairments. (Tr. 940.)

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 782.) In reaching

---

[1] Under the SSA, "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant can perform other work in the national economy despite her limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do").

In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 781–82.) In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that she suffered from severe physical and mental impairments,[2] and that her impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 772–74.) Therefore, the

---

[2] The ALJ determined that Plaintiff suffered from the following severe impairments: psoriatic arthritis, high blood pressure, history of breast cancer, depression, and anxiety. (Tr. 772.)

ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). In pertinent part, the ALJ found that Plaintiff

> had the [RFC] to perform light work . . . except she should avoid concentrated exposure to wetness and humidity; and is limited to simple, routine, and repetitive tasks in a stable environment at a nonproduction pace; would be off-task 9% of an eight-hour working day; and concentration is greater than two hours in an eight-hour workday.

(Tr. 774.) Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which she had previously been employed. (Tr. 781.) The ALJ thus proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in her RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 781–82.) To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform three jobs that existed in significant numbers in the national economy: "router,"[3] "office helper,"[4] and "marker."[5] (Tr. 782.) According to the DOT, all of these jobs involve "light work." The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent her from working; consequently, Plaintiff's application for Title II benefits was denied. (Tr. 782.)

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final

---

[3] DOT 222.587-038.
[4] DOT 239.567-010.
[5] DOT 209.587-034.

decision of the Commissioner and whether the Commissioner fulfilled his lawful duty in his determination that Plaintiff was not disabled under the Social Security Act. See 42 U.S.C. §§ 405(g), 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again or substitute its judgment for that of the Commissioner,

5

assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff contends that remand is warranted for three reasons: (1) the ALJ failed to explain his conclusion at step three that Plaintiff's psoriatic arthritis did not meet or medically equal Listing 8.05; (2) the ALJ failed to explain the meaning of the term "non-production work setting"; and (3) the ALJ failed to consider the side effects of Plaintiff's medications. The Court concludes that the ALJ did not commit reversible error.

### A. The ALJ provided a coherent basis for his step three conclusion and substantial evidence supports his conclusion.

Plaintiff argues that the ALJ erred at step three by failing to explain his conclusion that Plaintiff's psoriatic arthritis did not meet or medically equal Listing 8.05.

"The Social Security Administration has promulgated regulations containing listings of physical and mental impairments which, if met, are conclusive on the issue of disability." Radford, 734 F.3d at 291 (quotation marks omitted). At step three, the ALJ must determine whether the claimant has an impairment that meets or medically equals all the requirements of a listed impairment. Id. at 290–91. "Disability is conclusively established if a claimant's impairments meet all the

6

criteria of a listing or are medically equivalent to a listing." Gore v. Berryhill, No. 7:15-cv-00231, 2017 U.S. Dist. LEXIS 34557, at *17 (E.D.N.C. Feb. 23, 2017), adopted by 2017 U.S. Dist. LEXIS 34283 (E.D.N.C. Mar. 10, 2017). "[T]he ALJ must provide a coherent basis for his step three determination." Odoms v. Colvin, 194 F. Supp. 3d 415, 421 (W.D.N.C. 2016). "However, if the ALJ's opinion read as a whole provides substantial evidence to support the ALJ's decision at step three, such evidence may provide a basis for upholding the ALJ's determination." McDaniel v. Colvin, No. 2:14-cv-28157, 2016 U.S. Dist. LEXIS 43086, at *12–13 (S.D. W. Va. Mar. 31, 2016). Indeed, "even a cursory explanation at step three may prove satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Odoms, 194 F. Supp. 3d at 421 (quotation marks and brackets omitted).

To meet the criteria of Listing 8.05, a claimant must show "[d]ermatitis (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 8.05. "Extensive skin lesions" are defined as "those that involve multiple body sites or critical body areas, and result in a very serious limitation." Id. Sec. 8.00C.1. The regulations provide the following examples of extensive skin lesions resulting in a very serious limitation: (1) "[s]kin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity"; (2) "[s]kin

7

lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements"; and (3) "[s]kin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate." Id.

In contesting the ALJ's basis for his conclusion that Plaintiff's psoriatic arthritis did not meet or medically equal Listing 8.05, Plaintiff focuses only on the ALJ's step three analysis. In his step three analysis, the ALJ merely stated that "the claimant's psoriatic arthritis does not meet any of the listings in section 8.00 (skin disorders) . . . because it has been fairly well controlled with medication and other than observed patches on various portions of her body, there have been few other objective findings on examination." (Tr. 773.) But "the ALJ need not fully discuss her step-three determination in the section of her decision related to this analysis." McDaniel, 2016 U.S. Dist. LEXIS 43086, at *20. Here, the ALJ discussed the substantial evidence supporting his step three determination in the remainder of his decision. The ALJ noted that Plaintiff saw a specialist, Dr. Joseph J. Urash, for her psoriatic arthritis. (Tr. 777.) In July 2011, Plaintiff "reported that she had no complications or side effects from methotrexate," which she was prescribed for her psoriatic arthritis, and "she was pleased with her maintenance and control." (Tr. 777.) The ALJ also explained that

> Dr. Urash's treatment records do not indicate that the claimant has disabling physical limitations from her psoriatic arthritis. In fact, his treatment notes do not indicate that she was unable to use her fingers or to wear shoes as alleged. Generally, she attended regularly scheduled six-month office visits and did not request or require any increased treatment in the interim. His treatment notes document involvement

8

> of 10-25% of her body surface, with no arthritic changes noted. Additionally, the treatment notes do not document swelling in her arms.
>
> Further, the remaining primary care records document the presence of lesions, particularly on her ankles, knees, and elbows. However, she typically had no edema and no other objective findings or limitations were consistently documented.

(Tr. 778.) The ALJ thus provided a coherent basis for his conclusion that Plaintiff's psoriatic arthritis did not meet or medically equal Listing 8.05—specifically, it has been fairly well controlled with medication and other than observed patches on various portions of Plaintiff's body, there have been few other objective findings on examination. The remainder of the ALJ's decision discussed the substantial evidence supporting that conclusion. Therefore, the Court concludes that the ALJ did not commit reversible error in finding that Plaintiff's psoriatic arthritis did not meet or medically equal Listing 8.05.

### B. The ALJ built a logical bridge between the evidence and his RFC assessment.

In her second assignment of error, Plaintiff argues that the ALJ failed to explain the meaning of the term "non-production work setting" as forth in his RFC assessment. Plaintiff contends that the lack of such an explanation prevents meaningful review.

An ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). "In other words, the ALJ must both identify evidence that supports his conclusion and build an accurate and logical bridge from

that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quotation marks and brackets omitted). Remand may be appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636.

The Court is able to engage in a meaningful review of the ALJ's RFC assessment and finds that substantial evidence supports his determination. As an initial matter, contrary to Plaintiff's second assignment of error, the ALJ's RFC assessment does not include a limitation to a "non-production work setting." Instead, the ALJ's RFC assessment includes a limitation to "simple, routine, and repetitive tasks in a stable environment at a nonproduction pace." (Tr. 774.) The ALJ found that Plaintiff has a moderate limitation in concentration, persistence, or pace "due to her history of depression and anxiety and her alleged trouble of completing tasks." (Tr. 773.) The ALJ explained that Plaintiff's treating primary care provider, Dr. Dickson, prescribed Plaintiff anti-anxiety medications but did not refer Plaintiff for specialized mental health evaluation or treatment. (Tr. 779.) The ALJ noted that "Dr. Dickson's records do not consistently document any specific limitations or objective findings in this regard. Rather, the claimant typically presented with . . . normal attention span and concentration." (Tr. 779.) Further, the ALJ noted that Dr. Dickson's records indicate Plaintiff's depression is "well controlled." (Tr. 779.) Accordingly, the ALJ explained that "while [Plaintiff's] symptoms were fairly stable as indicated by her consistently normal mental status on examination, given her history of depression and anxiety, the undersigned has limited the claimant

to unskilled, simple, routine, and repetitive tasks in a stable environment." (Tr. 779.) In addition, the ALJ included a limitation to work at a nonproduction pace "due to her moderate deficits in sustaining concentration, persistence, and pace." (Tr. 779.)

Therefore, the Court concludes that the ALJ built a logical bridge between the evidence and his RFC assessment, and substantial evidence supports the ALJ's decision. See Allen v. Berryhill, No. 3:16-cv-00851, 2018 U.S. Dist. LEXIS 36379, at *9–12 (W.D.N.C. Mar. 6, 2018) (discussing cases and concluding that "non-production or non-assembly line pace limitations sufficiently account for a [claimant's] moderate limitation in [concentration, persistence, or pace]" absent some evidentiary showing by the claimant that a greater restriction is required).

### C. The ALJ did not commit reversible error in considering the side effects of Plaintiff's medications.

In Plaintiff's third assignment of error, Plaintiff contends that the ALJ failed to consider the side effects of Plaintiff's medications. The Court disagrees. The ALJ noted that when Plaintiff presented to Dr. Urash for her psoriatic arthritis, "she reported that she had no complications or side effects from methotrexate" and "[p]henergan was prescribed as needed for nausea." (Tr. 777.) In addition, the ALJ noted that there is "no indication that [Plaintiff] consistently reported any side effects from her medication, such as vomiting, to her treating primary care provider or to Dr. Urash." (Tr. 778.) While Plaintiff reported nausea from methotextrate in April 2014, the ALJ aptly noted that Plaintiff "specifically denied vomiting on follow up in June, October, and December 2014." (Tr. 778.) Therefore, the Court concludes that the ALJ considered the side effects of Plaintiff's medication, and the Court finds no

11

reversible error on this ground.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 13), is **GRANTED**;

3. The parties' consent motion for an extension of time, (Doc. No. 12), is **DENIED as moot**; and

4. The Clerk of Court is directed to close this case.

Signed: August 5, 2020

Robert J. Conrad, Jr.
United States District Judge